[Civ. No. 14642. First Dist., Div. Two. Feb. 27, 1951.]

WALTER R. HOLLINGUM, Respondent, v. CHARLES C. MOORE, Appellant.

F. E. Hoffman for Appellant.

Dolwig & Gaudio for Respondent.

DOOLING, J.—Defendant appeals from a judgment for personal injuries awarded to plaintiff after a trial without a jury. The complaint pleaded and the court found that at the time of his injuries plaintiff was a guest in defendant's automobile and the judgment is based upon a finding of defendant's wilful misconduct.

Plaintiff was the only witness to the conduct of defendant leading up to the collision with a pole which caused plaintiff's injuries and the principal question presented on appeal is whether his testimony is sufficient to support the finding of wilful misconduct. The essential portions of this testimony may be summarized as follows:

The parties met at Brisbane near the Bayshore Highway about 3:30 or 4 p. m. Defendant inquired about buying a house in which he was living and plaintiff said that since the house belonged to his wife defendant would have to talk to her about it. Defendant asked plaintiff to go with him in his car to see plaintiff's wife and plaintiff agreed. When they reached the Bayshore Highway defendant "shot right out onto the highway" without stopping for the boulevard stop sign and turned north, in the opposite direction from plaintiff's home. Plaintiff remonstrated with defendant and asked why they were going in the opposite direction and defendant said: "You just sit tight. You are going to see your cousin." Plaintiff objected and asked to be let out but defendant over plaintiff's objections continued to speed down the highway in the opposite direction from plaintiff's home, "he was driving too fast to suit me. I was frightened. I was insisting upon him letting me out; but, after he didn't stop at the stop sign there, then I did have an indication there was something rotten in Denmark, and I wanted to get out quick. . . . Q. How many times did you beg and plead with him to stop?

A. A half dozen times. I would have jumped out but he was going at such a rate of speed that it was impossible. . . .

"As we were speeding down the highway, there was a truck and another car in front, and he was coming at such a speed that he must have figured on going around . . . Anyhow we lost control of the car and the next thing you know, I am through the windshield. . . . He was in the outer lane . . . There was two cars, a truck, in the center lane. . . . Well, first he started over this way (to the left) . . . and then the truck showed up. . . . Q. On which side of these cars did he try to pass? A. On the right hand side. . . . Evidently with that one eye, he didn't see that pole. Q. . . . What type of pole was this? A. Concrete. Q. And it was off to the right of the highway limit? A. Yes. Q. Do you recall what nart of his car came in contact with the pole? . . . A. Right bang in the center. . . . Q. You did go through the windshield? A. Surely I did. . . . Slid right over the radiator."

The case might well have been tried on the theory that plaintiff was not a guest and hence defendant was liable for ordinary negligence on either of two theories. 1. In accompanying defendant to see plaintiff's wife about buying her house it would seem that plaintiff was giving a benefit to the driver. (*Kruzie* v. *Sanders*, 23 Cal.2d 237 [143 P.2d 704]; *Piercy* v. *Zeiss*, 8 Cal.App.2d 595 [47 P.2d 818]; *Fachadio* v. *Krovitz*, 62 Cal.App.2d 362 [144 P.2d 646].) 2. When defendant took plaintiff against his will in a direction away from the destination agreed upon it would appear that he was not a guest since one cannot be a guest without his consent. (*Rocha* v. *Hulen*, 6 Cal.App.2d 245, 253-254 [44 P.2d 478].) ▉ However plaintiff pleaded and the court found that he was a guest and under the settled rule he is bound on appeal by the theory adopted in the trial court. (*Ernst* v. *Searle*, 218 Cal. 233 [22 P.2d 715].)

▉ Defendant argues that mere speed cannot constitute wilful misconduct. This may be conceded, but where conflicting inferences reasonably can be drawn from the evidence "the decision of the trial court is as conclusive as where the conflict arises directly from the evidence." (*Wright* v. *Delta Properties, Inc.*, 79 Cal.App.2d 470, 478 [180 P.2d 57].) The trial court drew from the evidence the inference of wilful misconduct.

▉ In determining whether the defendant was guilty of wilful misconduct the trial court was not limited to the evidence of speed alone. The defendant's entire course of con-

duct was before the trial court and "all of the circumstances, including the speed at which said defendant was driving, may be considered when determining the question of whether he was guilty of wilful misconduct within the meaning of the statute." (*Rawlins* v. *Lory*, 44 Cal.App.2d 20, 23 [111 P.2d 973].)

The trial court had before it the picture of a driver who shot onto the heavily traveled Bayshore Highway in disregard of a stop sign, who against his repeated protests took the plaintiff away from the agreed destination at such a rate of speed that upon collision with a pole he was thrown completely through the windshield and onto the radiator, and who after turning to the left to pass a car and finding a truck in the center lane, instead of dropping behind the car which he was attempting to pass until the center lane was clear (as is done by hundreds of drivers in similar circumstances every day) swung to the right off the traveled portion of the highway directly into a concrete pole in broad daylight. We cannot say that the inference of wilful misconduct was not reasonably drawn from this aggravated course of conduct.

While there was no estimate of speed in miles per hour the trial court could infer from the fact that the collision projected the plaintiff completely through a glass windshield that the speed of the car must have been excessively high. Excessive speed coupled with the failure to stop at a stop sign has been held sufficient to support a finding of wilful misconduct (*Allen* v. *Robinson*, 85 Cal.App.2d 617 [193 P.2d 498]; *Browne* v. *Fernandez*, 140 Cal.App. 689 [36 P.2d 122]), and while the collision with the pole was not the proximate result of the failure to respect the stop sign, that failure cannot be overlooked in determining whether defendant was proceeding in a wanton disregard of the probable safety of the plaintiff. (*Cope* v. *Davison*, 30 Cal.2d 193, 199 [180 P.2d 873, 171 A.L.R. 667]; *Parsons* v. *Fuller*, 8 Cal.2d 463 [66 P.2d 430].)

Defendant's subsidiary claim that plaintiff's conduct was an inducing element of the defendant's is completely answered by his testimony of repeated objections and requests to be permitted to leave the car before the collision.

Judgment affirmed.

Schottky, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1951.